UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALISBURY WEST CONDOMINIUM TRUST,  )<br>                              Plaintiff,  )<br>                                          )<br>     v.                                   )<br>                                          )<br> TRAVELERS CASUALTY AND SURETY  )<br> COMPANY OF AMERICA,               )<br>                              Defendant.  )<br>_____)  | CIVIL ACTION<br>NO. 13-cv-40051 -TSH |

**REPORT AND RECOMMENDATION**
**REGARDING DEFENDANT'S MOTION TO DISMISS**

**October 15, 2013**

Hennessy, M.J.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and an order referring the motion to dismiss to me,[1] I make the following report and recommendation:

**BACKGROUND**

This lawsuit concerns the meaning of an exclusions clause in an insurance policy.  In 2008, Travelers Casualty and Surety Company of America ("Travelers") issued a "Non-Profit Management and Organization Liability Insurance Policy" to Salisbury West Condominium Trust (the "Trust") to defend and indemnify the Trust against liability it may incur in connection with the execution of its responsibilities to a multiple unit condominium complex.  During the policy period, owners of a condominium sued the Trust in the Massachusetts Superior Court seeking compensation from the Trust for personal injury, property damage, and emotional distress allegedly caused by flooding at their unit.  When the Trust demanded that Travelers

---

[1] See Docket #10 and #14.

1

defend and indemnify the Trust, Travelers disclaimed coverage citing an exclusion that was written into the policy by way of an endorsement. Despite repeated demands that Travelers defend and indemnify the Trust (even as the theory of the cause of the unit owners' damage evolved), Travelers maintained no coverage existed because the unit owners' claims were within the exclusion. Undeterred, the Trust sued Travelers in state court alleging (1) breach of contract; (2) violation of 93A; and, (3) a declaration that Travelers must defend and indemnify the Trust in the underlying Superior Court suit. (Docket #10-1). Travelers removed the case to federal court citing diversity of citizenship and an amount in controversy exceeding $75,000 (Docket #1). Travelers has moved to dismiss the Trust's Amended Complaint with prejudice, Rule 12(b)(6), or in the alternative for judgment on the pleadings, Rule 12(c). (Docket #10). The parties appeared before me and argued their positions on September 23, 2013.

## FACTS[2]

The Trust was organized in 1981 in connection with the construction of a residential condominium project in Worcester. See Docket #10-1, ¶ 3. In 2008, Travelers issued the Trust a policy entitled "Non-Profit Management and Organization Liability Insurance Policy," to protect the Trust against liability it might incur in its ongoing relationship with the condominium complex. Id. ¶ 4. Specifically, the policy insured the Trust against loss for "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the [Trust] or by one or more insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices." See Docket #10-3, p.5. Appended to the

---

[2] The facts are taken from the factual allegations in the Amended Complaint (Docket #10-1), and are accepted as true for purposes of this recommendation. Trans-Spec Truck v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008).

policy are a number of endorsements under the legend, "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY." Id., pp. 12, 15, 16.  One of the endorsements changes the scope of Clause IV regarding Exclusions to the policy's coverage.  Id., p. 15.  As amended it reads in conjunction with the unamended portion of the clause:

> **[Travelers] shall not be liable to make any payment for Loss in connection with any Claim made against [the Trust] …**
>
>> Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, provided this exclusion shall not apply to allegations of mental anguish or emotional distress if and only to the extent that such allegations are made as part of a **Claim** for **Wrongful Employment Practices**;
>>
>> for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including without limitation, construction defects, whether or not as a result of faulty or incorrect design or architectural plans, improper soil testing, inadequate or insufficient protection from soil and/or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot, or the supervision of actual construction, manufacturing or assembly of any tangible property.

Id. (hereinafter, the "Amended Exclusion").

So stood the policy between Travelers and the Trust when, in December 2008, an attorney for the Hannigans, the owners of unit 207, sent a letter to the Trust's property manager reporting that remedial measures taken by the Trust to address flooding from ground water had failed and ongoing flooding had damaged the Hannigans' unit and personal property.  See Docket #10-1, ¶ 5.  The Trust forwarded the letter to Travelers, demanding that Travelers defend and indemnify the Trust against any liability from the Hannigans' loss.  Id., ¶ 6.  In a written reply to the Trust in January 2009, Travelers disclaimed coverage.  Id., ¶ 7. Quoting from the Amended Exclusion, Travelers wrote: "all of the issues raised in the … letter [from the Hannigans' counsel] arise out of a construction defect, whether or not as a result of faulty or

incorrect design in the Hannigans' drainage system." Id., ¶ 9. In late 2009, a second similar letter from the Hannigans' counsel triggered another demand from the Trust and similar disclaimer from Travelers. Id., ¶¶ 10-11.

In May 2010, the Hannigans sued the Trust for damages. Id., ¶ 12. The Trust sent Travelers the complaint with a demand that Travelers defend and indemnify the Trust. Id. Travelers yet again denied coverage. Id., ¶ 13. In a letter dated June 2010, it wrote:

> All of the issues raised in the complaint arise out of a construction defect, whether or not as a result of faulty or incorrect design in the drainage system. Absent the damaged drainage system and resultant loss of use and damage to [the Hannigan's] property, there would be no basis for the Claim. Thus, the entire Claim rests on or arises out of damage, destruction, loss of use or deterioration of [the Hannigans'] property … there is no coverage.

Id. In September 2012, the Hannigans filed a Second Amended Complaint in which they alleged that a number of factors caused or contributed to the flooding, including: a 2007 sinkhole that indicated subsurface drainage system failure; the clogging in 2008 of a dry well; water runoff redirected from a busy street toward their unit; and a broken and improperly repaired perimeter drainage pipe.[3] Id., ¶ 14. When provided with this Second Amended Complaint, Travelers provided a response nearly identical to prior responses: that all the issues "arise out of

---

[3] Specifically, the Hannigans' Second Amended Complaint against the condominium association asserts Count I for Negligence:

> As a result of Salisbury West Condominium Trust's negligent behavior, [the Hannigans] have suffered personal injury and monetary damages, including but not limited to, destruction of personal property and sentimental possessions; damage to the integrity of their residence; improper and illegal installation of a sump pump in violation of state law, and most significantly, lasting personal injury to safety, health and welfare.

(Docket #10-2, ¶ 59). Counts II and III assert claims for negligent and intentional infliction of emotional distress. Id. ¶¶ 62-67.

a construction defect;" therefore, there was no coverage to the Trust for the Hannigans' losses. Id., ¶ 17.

In January 2013, the Trust's attorney wrote Travelers claiming that Travelers had erroneously relied on what the parties refer to as the "TPE," or Tangible Property Exclusion, to disclaim coverage. Id., ¶ 18. The Trust's attorney wrote that Travelers had denied coverage on the basis of the TPE's exclusion for liability for damages from "a construction defect, whether or not as a result of a faulty or incorrect design in the Hannigans' drainage system," and that the TPE did not say that. Id., ¶ 19. Moreover, counsel asserted, the TPE was so poorly worded as to be unintelligible and, at a minimum, ambiguous. Id., ¶¶ 19-21. Finally, counsel asserted that the damage to the Hannigans' property was caused by a broken drainage pipe, and thus was not within the language of the TPE. Id. ¶ 20. To these assertions, Travelers again disclaimed coverage, responding as follows:

> It is not at all Travelers' position that the TPE only applies 'if the tangible property harm arises out of a construction defect.' Rather, the TPE expressly bars coverage for any Claims 'for or arising out of any damage, destruction, loss of use or deterioration of tangible property.' As should be evident by the 'including without limitation' language that appears directly after the preceding phrase, the TPE's subsequent reference to 'construction defects' in no way limits the scope of the preceding phrase but merely clarifies that construction defects constitute a type of 'damage, destruction, lose of use, or deterioration of tangible property.'

Id., ¶ 22. Further correspondence failed to resolve the matter and the Trust sued Travelers, alleging (1) breach of contract; (2) violation of 93A; and, (3) a declaration that Travelers must defend and indemnify the Trust regarding the State Court Suit. Id., ¶¶ 28 – 39.

## DISCUSSION

As noted, at issue in this case is whether the Amended Exclusion unambiguously relieves Travelers of the duty to defend and indemnify the Trust for any liability arising from the Hannigans' claims. This breaks down into two questions: is the Amended Exclusion

unambiguous; and if so, are the Hannigans' claims within its scope?  I will first review the applicable law and then address these questions in order.

  1. Applicable Law

It is a long-recognized principle that federal courts sitting in diversity "apply state substantive law and federal procedural law." Hanna v. Plumer, 380 U.S. 460, 465 (1965); Essex Ins. Co. v. Bloomsouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009).  Even though the insured generally bears the burden of proving that a particular claim falls within a policy's coverage, Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 628 (2007), the burden here falls on the insurer, Travelers, because on a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)).  Materials attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the court may consider them on a motion to dismiss. Trans-Spec Truck Serv. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Under Massachusetts law, the interpretation of an insurance policy, and of an exclusionary clause within it, is normally a question of law for the court. Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008); Finn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 452 Mass. 690, 693 (2008); Fuller v. First Fin. Ins. Co., 448 Mass. 1, 5 (2006).

Moreover, the burden of proving the applicability of an exclusionary clause typically falls on the insurer. Hanover Ins. Co. v. Talhouni, 413 Mass. 781, 785 (1992). Accordingly, both the posture of the case and the law regarding the burden of establishing whether a claim falls within an exclusions clause place the burden on Travelers to show that the Trust is not entitled to relief.

In the interpretation of insurance contracts, the court is guided by several established principles. "An insurance policy is to be construed according to the fair and reasonable meaning of its words." City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, 640 (2006). Every word in an insurance contract "must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Jacobs v. United States Fid. & Guar. Co., 417 Mass. 75, 77 (1994) (quoting Wrobel v. General Acc. Fire & Life Assur. Corp., 288 Mass. 206, 209-10 (1934)). If free from ambiguity, an exclusions clause, like all other provisions of an insurance contract, must be given its usual and ordinary meaning. Royal-Globe Ins. Co. v. Schultz, 385 Mass. 1013 (1982). The fact that there is a controversy between the parties to the contract exists does not establish an ambiguity; rather, a term or provision is ambiguous if it is reasonably susceptible to more than one interpretation. Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995). Accordingly, "[a] policy of insurance whose provisions are plainly and definitively expressed must be enforced in accordance with its terms." Hyfer v. Metropolitan Life Ins. Co., 318 Mass. 175, 179 (1945). We turn to the policy to see whether its provisions are "plainly and definitively" expressed.

2. Is the Amended Exclusion Ambiguous?

Travelers urges in its motion to dismiss and in oral argument that the Trust purchased a directors and officers liability policy to protect the Trust from claims in connection with its management responsibilities to the condominium unit owners. According to Travelers, the Trust

did not pay for, and Travelers did not issue, a policy to protect the Trust from liability for any type of bodily injury, or death, or mental and emotional injury, or tangible property loss from unit owners.[4] Travelers points to the plain meaning and broad scope of the Amended Exclusion which excludes coverage:

> based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving bodily injury, sickness, mental anguish, emotional distress, disease or death of any person….

See Docket #10-3, p. 15. Similarly, the tangible property exclusion is populated with the same very broad and definitive language against coverage, because it excludes coverage for claims:

> for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including without limitation …

Id. Travelers also notes that both clauses use, among other phrases, "arising out of," and, this familiar phrase has been given broad scope by Massachusetts courts interpreting insurance policy language. Finn v. Nat'l Union, 452 Mass. at 697. Stated differently, the term "arising out of" is, as a matter of Massachusetts law, a broad concept requiring only a slight connection or incidental relationship between the injury and the risk.[5] Id.

There is a good deal of merit to Travelers' position. The policy is titled "Non-Profit Management and Organization Liability Insurance Policy." The policy insures the Trust against

---

[4] The one exception arises from specific language in the Amended Exclusions that specifies coverage exists for claims based on a wrongful employment practices. None of the Hannigans' claims stem from wrongful employment practices.

[5] Travelers also contends that Massachusetts courts have also consistently held that where an exclusion broadly employs the "arising out of" language to an excluded claim or damage, the reasonable expectations test is not to be considered. Finn, 452 Mass. at 697-978; A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445 Mass. 502 (2005). Based on the plain language of the Amended Exclusion, even if the court were to apply the "reasonable expectations" test, it would be unreasonable as a matter of law to say that the Trust expected the directors and officers liability policy it purchased would cover the water damage and related claims the Hannigans assert.


loss for a "Wrongful Act," a term defined in Section II of the policy. For purposes of discussion, in broad terms, the policy commits Travelers to insure the Trust for claims based on the Trust's "Wrongful Act," but it also lists sweeping exclusions that specify that Travelers would not be liable for certain types of injuries and damages. See Docket #10-3, pp. 4, 6, 15. For example, the policy excludes coverage for a multitude of claims against the Trust, from claims for pollutants or ERISA violations, to claims made before the policy period start date. Id. So, generally speaking, the policy addresses "Wrongful Acts" as a result of the acts or omissions of the Trust and other insured persons, provided those acts are not excluded.

The choice and breadth of the words (e.g. "arising out of") used in the Amended Exclusion quoted above unambiguously conveys that injuries to persons or property are excluded from the insurance coverage. As noted above, the term "arising out of" requires only a slight or incidental link between the injury and the risk, and that slight connection or incidental relationship is present in the underlying case. Indeed, given the language of the Amended Exclusion, it is hard to believe that the Trust could have signed this policy and thought: "we have some coverage if anyone is injured physically, mentally or emotionally, or, we are responsible for tangible property damage unless the causation is within the list of excluded causes;" but, that is the Trust's position. The Trust asserts that the clause is ambiguous, supported by two arguments, for its implausible interpretation.

The Trust's first argument is that the exclusion is ambiguous, and this is shown because Travelers disclaimed coverage citing the Amended Exclusion, but in two different ways. Initially, Travelers said it was excluding coverage for the Hannigans' claims because their tangible property damage "arose out of a construction defect." This, the Trust accurately notes, was Travelers' written response in four letters over a four-year period to the Trust's demands

that Travelers defend and indemnify regarding the Hannigans' claims. Subsequently, Travelers refused coverage for the Hannigans' claims, citing the preceding phrase that specifies the Amended Exclusion applies to any claim "for or arising out of any damage, destruction, loss of use or deterioration of tangible property" i.e., whether or not the cause of the damage and loss was a construction defect. In the Trust's view, the two foregoing reasons given for refusing coverage are inconsistent interpretations of the Amended Exclusions, and thus it is ambiguous.

To the extent there is some tension or inconsistency from one reason to the other -- and I do not think that there is -- I believe that the Trust makes too much of Travelers' responses. It is certainly reasonable under the circumstances that Travelers' four initial responses to the Trust's demands to be focused on the "ar[ose] out of any construction defects" language in the Amended Exclusion because the Hannigans' complaint identified a construction defect as the cause of the flooding which damaged their property. Travelers could just as easily have relied on the more general language of the Amended Exclusion, but reasonably chose to direct the Trust to the more specific language that spoke directly to the alleged cause of the Hannigans' claims as they were first asserted.

Similarly, when the Second Amended Complaint recited a number of causes for flooding at the Hannigans' unit which may or may not fit within the rubric of "any … construction defects," it was reasonable for Travelers to then rely on the more general language of the Amended Exclusion against coverage. In a manner of speaking, Travelers' broader -- even if, as argued by the Trust, inconsistent -- response conveys the notion that it was not necessary to parse out what caused the damage and whether that cause fits within the rubric of construction defects, because tangible property loss, regardless of its cause, is not covered. Given the evolution of the

Hannigans' claims, I disagree with the Trust that the differences in Travelers' responses indicate that the Amended Exclusion is ambiguous.

The Trust's second argument regarding ambiguity fares no better. In a somewhat convoluted presentation, the Trust urges that the Tangible Property Exclusion found within the Amended Exclusion (the "TPE") can be read to exclude coverage only for damage resulting or caused by one of the listed events. The Trust argues the Hannigans' damage was caused by a broken drainage pipe, and coverage should exist because a "broken drainage pipe" is not one of the listed events in the exclusion. Again, the TPE excludes coverage for claims:

> for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including without limitation, construction defects, whether or not as a result of faulty or incorrect design or architectural plans, improper soil testing, inadequate or insufficient protection from soil and/or ground water movement, soil subsidence, mold, toxic mold, spores mildew, fungus or wet or dry rot, or the supervision of actual construction, manufacturing, or assembly of any tangible property.

See Docket #10-3, p. 15. The Trust argues that the words "whether or not" can mean "if or if not;" so the Trust contends the court should substitute "if or if not" into the clause to show that the clause can have alternative interpretations. See Trust's Opposition, Docket #13, p. 15. The argument goes that if a fact finder adopted the "if" reading, then the exclusion is limited to the causes listed in the TPE that follow the phrase "whether or not." On the other hand, if the fact finder adopted the "if not" reading, then the TPE leads to a contrary result on coverage and the exclusion is therefore ambiguous. Assuming I understand this argument, it supports a tortured, incomprehensible and unreasonable reading of the TPE.

Another problem with the Trust's second argument is that its success depends on the phrase "whether or not," addressing or modifying every listed cause of tangible property loss that appears subsequent to it in the TPE, e.g., "improper soil testing … mold, toxic mold, spores,

mildew, fungus." See Trust's Opposition, Docket #13, p. 15. This is an unreasonable reading of the TPE. "Whether or not" is placed after and clearly modifies the words "construction defects." This is clear from the location of the phrase, the fact that it is set off by commas and the content of the phrase "whether or not as a result of faulty or incorrect design or architectural plans." The next words to appear in the TPE after this phrase, "improper soil testing" do not fit easily with "construction defect." Rather, it is a separate and independent illustration, like others such as "mold, toxic mold, spores, mildew, fungus, or wet or dry rot," that were meant to convey the breadth of the TPE and not just the words "construction defects."

Aside from the aforementioned problems with this argument, the fundamental defect in this reading of the TPE is that it ignores the phrase "including without limitation," which precedes every one of the causes of tangible property damage listed in the TPE. The TPE reads "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property, including without limitation…." The phrase "including without limitation" is a broad and unambiguous phrase that leaves little doubt about the scope and meaning of the TPE. The Trust's "if" interpretation, limiting the TPE to just the listed causes, would make "including without limitation" superfluous, and it is settled that every word in an insurance contract "must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Jacobs, 417 Mass. at 77. See also, In re Felt Mfg. Co., Inc., 402 B.R. 502, 514 (Bankr. D. N.H. 2009) (noting that a contract's use of the word "including" should be read so as to avoid making other terms meaningless).

The Trust rightfully argues that if "including without limitation" is given its rightful meaning, then every cause listed in the TPE that follows this phrase is superfluous. "Why," the Trust asks, "does the Policy simply not say that?" See Trust's Opposition, Docket #13, p. 11.

The answer is that the elaboration that follows language such as "including without limitation" illustrates, clarifies, emphasizes, and ensures that the party to whom information is communicated understands the absence of boundaries and limits.  After all, it is not uncommon for a doctor to warn a patient in this fashion ("nothing high in sodium, including fried foods, hot dogs, etc." or "no weight on that ankle, including no walking, stationary cycling, etc."); and, most would agree that the patient who ingested a bag of potato chips or went down-hill skiing would be in violation of doctor's orders.  In sum, an elaboration serves to illustrate or clarify or emphasize a prohibition or exclusion.  Here, it is reasonable for Travelers to employ such a device not to obfuscate, but to clarify the scope of the TPE.  This does not render it ambiguous.

In sum, the TPE is a very broad provision which unambiguously expresses the exclusions that apply to the policy.  Travelers has carried its burden to show that the Amended Exclusion is unambiguous and is subject to interpretation as a matter of law.  Flomenbaum, 451 Mass. at 742.

3. Are the Claims for which the Trust Seeks Coverage Within the Amended Exclusion

"[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state … a claim covered by the policy terms, the insurer must undertake the defense." Jimmy's Diner, Inc. v. Liquor Liab. Joint Underwriting Ass'n, 410 Mass. 61, 62 (1991) quoting Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983).

Here, the claims for which the Trust demands that Travelers defend and indemnify it are for personal injury, emotional distress and property damage allegedly caused by flooding from a number of sources including an improperly repaired perimeter drain.  The Hannigans seek damages for "destruction of personal property and sentimental possessions; damage to the

integrity of their residence; improper and illegal installation of a sump put in violation of state law, and most significantly, lasting personal injury to safety, health and welfare." See Docket #10-2, ¶ 59.  As discussed above in detail, the claims for which the Trust seeks coverage fall squarely within the express language of the Amended Exclusion.  Thus, Travelers has met its burden of proving the applicability of the Amended Exclusion.  Hanover v. Talhouni, 413 Mass. at 785.

Taking all facts pleaded by the Trust as true, the Trust cannot show that it is entitled to relief it seeks.  Twombly, 550 U.S. at 570.  Accordingly, I recommend that the motion to dismiss be granted and all three counts of the Trust's Amended Complaint (Docket #10-1) be dismissed.

## CONCLUSION

As a matter of law, the plain language of the exclusion in Travelers' insurance policy under which the Trust seeks defense and indemnity does not afford coverage for the Hannigans' claims.  For the reasons stated above, I RECOMMEND that the Motion to Dismiss (Document #10) be GRANTED.[6]

> /s/David H. Hennessy
> David H. Hennessy
> United States Magistrate Judge

---

[6] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).